Domenic A. Cossi, Esq.
Maxwell E. Kirchhoff, Esq.
**WESTERN JUSTICE ASSOCIATES, PLLC**
303 West Mendenhall Street, Suite 1
Bozeman, MT 59715
(406) 587-1900
Email: domenic@westernjusticelaw.com
Email: max@westernjusticelaw.com

R. Bruce Carlson, Esq.
Kelly K. Iverson, Esq.
Kevin W. Tucker, Esq.
(*All to be admitted pro hac vice*)
**CARLSON LYNCH SWEET KILPELA & CARPENTER, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
(412) 322-9243
Email: bcarlson@carlsonlynch.com
Email: kiverson@carlsonlynch.com
Email: ktucker@carlsonlynch.com

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MONTANA
### GREAT FALLS DIVISION

| | |
|---|---|
| MELISSA HILL, individually and on behalf of all others similarly situated, | Cause No. _____ |
| Plaintiff, | |
| v. | Filed Electronically |
| LLR, INC. d/b/a LuLaRoe, and LULAROE, LLC | **CLASS ACTION COMPLAINT** |
| Defendants. | **and** |
| | **DEMAND FOR JURY TRIAL** |

Plaintiff Melissa Hill ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Defendant LLR, Inc. ("LLR") and LuLaRoe, LLC ("LLR LLC") (hereinafter, collectively, "LuLaRoe" or "Defendants"), and states:

## INTRODUCTION

1.    From at least April 2016 through June 1, 2017, Defendants unlawfully charged a "sales tax" to consumers in Montana, which imposes no sales tax on purchases. LuLaRoe knew its collection of taxes in Montana was unlawful, but concealed this fact from consumers, actively misleading them regarding the legality of its practice. This unlawful practice harmed Plaintiff and each class member in precisely the same manner.

2.    Plaintiff brings this action on behalf of herself and all others similarly situated to challenge Defendants' unlawful, unjust, deceptive and fraudulent practice, which damaged Montana residents by including unauthorized overcharges on purchases for which no sales tax exists and seeks the following relief: (1) actual damages in the form of a complete and accurate disgorgement of all unlawfully collected taxes; (2) an accounting to ensure that the disgorgement is in fact complete and accurate; and (3) all available compensatory, statutory, and punitive damages, along with attorneys' fees and costs.

## JURISDICTION AND VENUE

3.     This Court has original jurisdiction of this action pursuant to the Class Action Fairness Act, 28 U.S.C §1332(d): the matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000; this case is a class action in which at least some members of the proposed class have a different citizenship from Defendants; and there are more than 100 putative class members.

4.     The District of Montana has personal jurisdiction over the Defendants named in this action because Defendants conduct substantial business in this District.

5.     Venue is proper in the District of Montana under 28 U.S.C. § 1391(b) because Plaintiff Hill purchased products from Defendants in this District, and a substantial part of the acts and omissions giving rise to her claims occurred here.

## PARTIES

6.     Plaintiff Melissa Hill is and at all times relevant hereto has been a resident of Great Falls, Montana.

7.     LuLaRoe is a multilevel-marketing company that sells clothing through fashion retailers located in all fifty states to consumers across the United States.

8.     Defendant LLR is incorporated in Wyoming and headquartered in California.

*Class Action Complaint and Demand for Jury Trial*                    **Page 3**

9.    Defendant LLR LLC is organized in and headquartered in California.

10.    Defendant LLR implemented the 2016 Tax Policy (defined *infra*) that is at issue in this Complaint and collected the unlawful sales tax at issue in this Complaint.

11.    Defendant LLR LLC enforced the unlawful 2016 Tax Policy at issue in this Complaint and LLR LLC owned the point-of-sale ("POS") system, Audrey, which was programmed to charge the unlawful surcharges complained of in this Complaint.

12.    According to the CEO of LLR, "there is not a clear distinction" between LLR and LLR LLC and the two companies convene an executive committee meeting every Monday that involves members of both companies and is not designated as an LLR or LLR LLC meeting.

13.    Accordingly, both Defendants were involved in perpetrating the deceptive and fraudulent conduct, explained more fully below.

## STATEMENT OF FACTS

14.    Sales tax is a consumption tax on the purchase of goods or services assessed by some states and municipalities.

15.    A retail transaction is only subject to sales tax in the taxing authority where the goods are delivered.

16.    For example, when a buyer and seller reside in the same state, and the buyer takes possession of the purchased goods in that state, the sales tax laws of the buyer and seller's state govern the transaction.

17.    On the other hand, when the buyer and seller reside in different states, and the seller delivers the purchased goods from its state to the buyer's state, the sales tax laws of the buyer's state govern the transaction.

18.    LuLaRoe collects and remits sales tax on behalf of its retailers.

19.    Montana has no sales tax.

20.    This action is brought on behalf of consumers that made purchases from LuLaRoe retailers outside of Montana and had them shipped into Montana and had an unlawful sales tax imposed on their purchase.

A. **LuLaRoe's Tax Practices Prior to April 2016**

21.    Beginning in 2014, LuLaRoe was being pressured by taxing authorities to remit tax on its retailers' sales.

22.    As a result, it initiated a relationship with Utah-based POS vendor ControlPad to implement a POS system called "Audrey."

23.    Audrey was introduced to retailers in or around May or June 2015 and LuLaRoe's policy and procedures, which the retailers contractually agreed to follow, required that LuLaRoe retailers "must" use the Audrey POS.

*Class Action Complaint and Demand for Jury Trial*                    **Page 5**

24.    Prior to April 2016, the Audrey system included a toggle-switch, which permitted LuLaRoe's retailers to turn off tax charges when they made a sale into a tax-free jurisdiction, preventing any improper tax charges to the putative class members.

B. **LuLaRoe Discovers it is Overpaying Sales Tax**

25.    In January 2016, LuLaRoe's Senior Tax Advisor undertook to reconcile LuLaRoe's prior tax filings.

26.    What he discovered was that, because of the way Audrey was programmed, LuLaRoe was paying sales tax on *all* sales regardless of whether or not the end consumer was charged or paid sales tax on a transaction (*i.e.*, LuLaRoe was overpaying sales tax because it was paying tax on the transactions shipped to class members but (properly) was not charging them tax).

27.    LuLaRoe manufactured a "solution" to address this tax dilemma: the 2016 Tax Policy (defined below), which was designed to wrongly shift the overpayments caused by the failures of LuLaRoe's Audrey system from LuLaRoe to its end consumers, including the Plaintiff and class members.

C. **LuLaRoe's Implementation of its 2016 Tax Policy**

28.    In April 2016,[1] LuLaRoe announced its new tax policy via webinar and conference call: henceforth Audrey would be collecting tax from end consumers based upon retailer location, across the board, on every transaction, regardless of where the product was delivered (the "2016 Tax Policy").

29.    The use of Audrey, as *well as compliance with the new policy*, was not an option for retailers. The new policy was sent by email to *all* LuLaRoe retailers.

30.    One retailer summarized the instruction from LuLaRoe as follows:

Sales Tax - LEAVE THE BOX CHECKED FOR SALES TAX IN ALL CIRCUMSTANCES FROM NOW ON - it will be calculated based on where you live. We can either start right now and charge you as retailers sales tax on the retail amount when you place your wholesale orders (a terrible solution that no one wants) - or, you all have to collect sales tax 100% of the time regardless of where it is being shipped. The Sales Tax will be calculated based on where YOU live and do business. This is NOT optional - you MUST leave the sales tax box checked - everyone NEEDS to charge Sales Tax based on the rate of the location where THEY DO BUSINESS on all purchases no matter what. The tax rate that your customer will be charged will be based on where YOU are. Keep the box checked. This is our process now - to remain in good standing with all the states. This is short term. In the long term, the software will get a new functionality and your customer will be charged tax based on the shipping destination in the future.

---

[1]    In early 2016, LLR LLC purchased Audrey from Control Pad and moved the Audrey point-of-sale system in house with LuLaRoe.

31.    Thereafter, LuLaRoe altered the Audrey POS to prevent retailers from turning off the sales tax feature when making sales delivered into other states with no sales tax, such as to class members' jurisdictions.

32.    LuLaRoe retailers were instructed not to change the sales tax rate calculated by Audrey, even for remote sales delivered to jurisdictions where the purchases were not taxable.

33.    As a result of LuLaRoe's new policy and the change in Audrey's functionality, when anyone from any jurisdiction, including jurisdictions without sales tax on clothing, purchased a LuLaRoe product, that consumer was automatically and systematically charged sales tax if the retailor was located in a jurisdiction which charged sales tax.

34.    By way of example, if a consumer from Montana purchased a LuLaRoe product online from a retailer in a state with sales tax on clothes, such as Ohio, and had that product shipped to Montana, LuLaRoe improperly charged the Montana resident an Ohio state and local sales tax on that purchase.

35.    If that same Montana consumer also purchased from a retailer in Washington and Hawaii, LuLaRoe improperly charged the state and local Washington and Hawaii tax rates, respectively, to the Montana consumer.

D. **LuLaRoe Lies to its Retailers & Consumers Regarding the Legality of the 2016 Tax Policy**

36.    LuLaRoe's retailers are the front line point of communication with LuLaRoe's end consumers.

37.    Immediately after it enacted the unlawful 2016 Tax Policy, LuLaRoe issued a sales tax memorandum and "white paper" memorandum to all of its retailers, which was authored by Terrel Transtrum, a "licensed tax attorney with law degrees from University of Idaho (J.D.) and University of Miami (LL.M. – Masters of Law in Taxation)."

38.    In the "white paper," LuLaRoe told its retailers that the policy it implemented, requiring that tax be charged based upon the location of the retailer, was proper and legal.

39.    The "white paper" fraudulently claimed that it was proper to collect sales tax based on the retailer address, whether the customer is physically present or not, because it is as if the customer is purchasing from the retailers' homes.

40.    As repeatedly admitted by LuLaRoe's own officers, this information was false; LuLaRoe's "Ethics Specialist," who was part of LuLaRoe's management team, admitted that it was "not ethical" to collect tax from the class members when no tax should have been charged.

41.    LuLaRoe expected that the false information set forth in the white paper would be disseminated to the end consumers.[2]

42.    LuLaRoe also knew and expected that, if questioned, retailers sent the sales tax memo out to LuLaRoe end customers.

43.    Indeed, LuLaRoe itself would send the sales tax memo out to end consumers who contacted LuLaRoe directly to question the validity of the sales tax policy.

E. **LuLaRoe Knew that its Sales Tax Procedures were Unlawful (and the White Paper, False) Yet Continued its Practices**

44.    Within a month of LuLaRoe issuing the fraudulent advice in the sales tax memorandum and white paper to its retailers (and, therefore, its end consumers) the Attorney General of the Commonwealth of Pennsylvania transmitted a consumer complaint to LuLaRoe, dated May 16, 2016, challenging LuLaRoe's illegal sales tax practices.

45.    On June 28, 2016, LuLaRoe responded to the Attorney General, *unequivocally admitting that LuLaRoe knew that its sales tax policy was overcharging people in states that did not have a sales tax on the clothing that LuLaRoe sells*.

---

[2]    The only information provided to LuLaRoe's retailers about the 2016 Tax Policy was the announcement itself, the sales tax memorandum, and the white paper and these were to be used by the retailers to explain the 2016 Tax Policy to LuLaRoe's customers.

46.    Despite this admission, LuLaRoe *did not* discontinue its improper sales tax policy or reinstitute the ability for retailers to remove sales tax charges on purchases sold outside of their state.

47.    By May 31, 2016, LuLaRoe had also received a notice from the State of Minnesota Office of the Attorney General requesting that LuLaRoe "review and correct its systems to be in compliance with Minnesota sales tax law" and "determine the number of other Minnesotans who need to be refunded for paying sales tax."

48.    Yet again, LuLaRoe acknowledged its fault but did nothing discontinue its systematic practice of overcharging sales tax.

49.    Indeed, when it enacted its 2016 Tax Policy, LuLaRoe was aware that it would result in customers being incorrectly charged tax. LuLaRoe's CEO, Mr. Stidham, admitted under oath in an unrelated Utah proceeding brought by its former payment processing vendor that LuLaRoe knew this class action was coming.

50.    Despite these acknowledgements and after admitting to two different states' Attorney Generals that its tax practices were unlawful, LuLaRoe continued to unlawfully surcharge its consumers until June 1, 2017.[3]

---

[3]    According to LuLaRoe, by June 1, 2017, its retailers were no longer operating on Audrey and the new POS system purportedly does not overcharge tax to the class members.

*Class Action Complaint and Demand for Jury Trial*                                **Page 11**

51.    LuLaRoe did nothing to retract its statements to its retailers that what it was doing was proper and lawful, concealing its knowledge from those retailers and, by extension, its end consumers.

52.    LuLaRoe also continued to disseminate the false information in the sales tax memorandum and white paper well into 2017.

F.  **The Plaintiff's and Class Members' Experiences**

53.    Plaintiff resides in Great Falls, Montana, which has no sales or use tax.

54.    Plaintiff Hill made purchases from LuLaRoe retailers in other states and had those purchases shipped to her home in Great Falls, Montana.

55.    Plaintiff Hill was charged a "sales tax" on purchases that she made from LuLaRoe's remote consultants.



On Wednesday, December 14, 2016, 8:21 PM, ███████ <receipts@mylularoe.com> wrote:

**Missie Whitaker-Hill**

**Order #28395067 CARD**

Shipping
Missie Hill
███████
Great Falls, MT
59405

Billing
███████
Great Falls, MT
59405

| | Amount $ | 50.00 |
| | Tax $ | 5.16 |
| | Discount $ | 1.00 |

███████

| | Total Paid $ | 53.16 |

| Model | M na |
|---|---|
| Carly | 1 |
| First Class Shipping and Handling | 1 |
| **Total Items In This Order** | **2** |

On Friday, December 16, 2016, 6:18 AM, ███████ <invoices@mylularoe.com> wrote:

**Missie Whitaker-Hill**

Invoice #28443723

Thank you for your order.

Balance Due
This invoice has a balance of $40.01
Click here to pay invoice 28443723

| | Subtotal | $38.00 |
| | Tax | $2.01 |
| | Total | $40.01 |
| | Balance | $40.01 |

Pay invoice 28443723

| Model | M na |
|---|---|
| Irma | 1 |

| First Class Shipping and Handling | 1 |
|---|---|
| **Total Items In This Order** | **2** |



56.    LuLaRoe's conduct was uniform to Plaintiff and all class members.

57.    Like Plaintiff, the class members all purchased LuLaRoe clothing from retailers outside of Montana to be shipped into Montana, which has no sales or use tax on such purchases.

58.    Plaintiff and every class member received an invoice from the retailer that was generated by LuLaRoe's Audrey system.

59.    The invoice represented that LuLaRoe collected a "sales tax" on the purchase.

60.    Plaintiff and every class member paid the invoice that implicitly represented they were paying a proper sales/use tax when, in fact, no such tax was owed by the Plaintiff and class members—a fact readily known by LuLaRoe.

61.    If a customer questioned LuLaRoe about the "sales tax," LuLaRoe perpetuated its deceptive practice by either falsely advising the customer that the tax was proper and lawful or directing the inquiry to the retailers for them to perpetuate LuLaRoe's deceptive practice.

62.    In turn, LuLaRoe's retailers were trained to uniformly inform the customer of the 2016 Tax Policy—set forth in the "white paper" and sales tax memorandum—wrongly claiming that LuLaRoe's deceptive practice was lawful (*i.e.*, that the tax was properly assessed based on retailer location).

63.    LuLaRoe has identified the transactions for which it incorrectly charged a non-existent "sales tax" to its end consumers in Montana and was able to ascertain the identity of the end consumers for those transactions.

64.    The harm to the class is consistent because of LuLaRoe's systematic, fraudulent conduct.

*Class Action Complaint and Demand for Jury Trial*                    **Page 15**

65.    LuLaRoe charged a fraudulent tax on at least 52,379 sales transactions shipped into Montana from April 2016 through at least June 1, 2017.

### G. **LuLaRoe is Sued on February 17, 2017 on Behalf of, *Inter Alia*, the Class**

66.    On February 17, 2017, a lawsuit styled as *Webster v. LLR, Inc.*, was instituted in the Western District of Pennsylvania, alleging claims on behalf of class members in eleven states that have jurisdictions where there is no sales tax on the clothing LuLaRoe sells, but where those customers were charged the fraudulent tax – the class in *Webster* included Plaintiff and the putative class members here.

67.    A motion for class certification was filed on December 6, 2017, on behalf of eleven subclasses representing eleven different states, including Montana.

68.    On August 20, 2018, the *Webster* Court denied certification based on the variations in state laws that would have to be addressed with the eleven subclasses.

69.    The District Court, there, made no findings on the merits, nor did the decision preclude filing this class action Complaint on behalf of Montana residents because the issues that the court found precluded Rule 23 class certification in that action are no longer present in light of this action involving only one state's laws – that of Montana.

*Class Action Complaint and Demand for Jury Trial*                    **Page 16**

70.    Plaintiff and class members' claims against LLR, Inc. were tolled since February 17, 2017, in light of that pending class action.

71.    Plaintiff and class members assert claims against LLR LLC for all transactions made within the applicable statute of limitations for its continuing violation.

## H. **LuLaRoe's Improper Attempt to "Pick Off" the Class**

72.    From April 2016 until the *Webster* Complaint was filed, LuLaRoe stood by its decision to systematically and fraudulently surcharge its customers in the guise of "tax" going so far as to publish a white paper alleging that its improper conduct was lawful.

73.    Once its fraudulent practices became the subject of a class action (and media attention), only then did LuLaRoe change its tune.

74.    In a statement published on February 27, 2017, (after the filing of the complaint in *Webster*) a LuLaRoe spokesperson told Forbes Magazine:

> We have been aware of sporadic problems with our former payments vendor, which have increased over the past year with the fast growth of our company.
> …
> The issue involved 'our former payments vendor, which had a technology system failure that misidentified the accurate location of certain individuals.' Since that time, according to a company spokesperson, '[w]e have immediately reimbursed any individual

whom we could identify as having been improperly charged sales tax.' Further, the company says '[w]e are proactively working to ensure that all affected individuals are refunded.'

*See* Forbes, Popular Fashion Line LuLaRoe Sued Over Sales Tax Charges, Feb 27, 2017, available at https://www.forbes.com/sites/kellyphillipserb/2017/02/27/popular-fashion-line-lularoe-sued-for-overcharging-customers-sales-tax/#5f4aeac7176d.

75.    As part of an apparent effort to put the genie back into the bottle regarding its unlawful collection of taxes at issue, **and only after the *Webster* lawsuit was filed,** LuLaRoe engaged in a confusing, ad hoc, refund scheme in a failed effort to escape responsibility for its bad acts.

76.    While LuLaRoe will presumably frame these refund efforts as a belated attempt to "do the right thing," LuLaRoe's refund effort—undertaken *after* it was caught with its hand in the cookie jar—does not save it from liability and, instead, is a concession of fault.

77.    LuLaRoe claims that it had a "plan" to refund the improper charges to all class members at some unknown future point, but did not actually undertake to make refunds to the class members until after the Complaint was filed.

78.    Shockingly, LuLaRoe takes the position that the refund "plan" was in place as of April 2016 –*the same time it created and distributed the false white paper and sales tax memo to its retailers*.

79.    The only logical conclusion is that LuLaRoe unequivocally knew when it instituted its 2016 Tax Policy that it was not in compliance with the laws and that the operation and effect of the policy would cause harm to its end customers.

80.    LuLaRoe actively hid this knowledge until after it was sued in court: LuLaRoe never announced its purported "plan" to retailers or end customers before the *Webster* Complaint was filed and it continued to disseminate the false sales tax memorandum to retailers and customers through and including February 2017, when the *Webster* Complaint was filed.

81.    Any suggestion that LuLaRoe's attempt to manufacture its own "remedy" to its fraud somehow excuses its egregious conduct is disingenuous.

82.    LuLaRoe's "remedy" provided class members with no basis for ascertaining what the amount of the overcharge was or whether the entire amount of the unlawful charge was refunded, nor did it compensate Plaintiff or the class members for the full amount of their damages under the class claims (*i.e*, interest, statutory, and/or punitive damages).

83.    LuLaRoe admits that it refunded *only* the amounts it improperly charged without any interest or other damages added.

84.    Indeed, while LuLaRoe alleges that it has refunded the $255,483.35 it overcharged the Plaintiff and putative class, LuLaRoe has suffered ***absolutely no*** consequence for its knowing and unlawful conduct towards the class because in LuLaRoe's own words, the refund program made after over a year of LuLaRoe's deception of its consumers was a "zero-sum" game for LuLaRoe.

85.    This scenario is the exact reason why states have consumer protection statutes.  LuLaRoe's belated refunds do nothing to defeat the class claims here.

## I.    LuLaRoe Benefited From the Use of Audrey and the Deceptive 2016 Tax Policy

86.    While LuLaRoe has claimed that it did not benefit from its bad acts because it placed any unlawful "tax" it collected into a sequestered account, and paid that money to the retailers' (notably, not the consumers') taxing authority, such position ignores that the causes of action alleged herein ***are intended to protect the party harmed***, not focus on whether the bad actor benefitted from its deceptive conduct.

87.    For its retailers' mandatory use of Audrey, LuLaRoe received incentive payments from its payment processing vendor, totaling approximately $5.6 million in 2016 and $1.9 million in just the first two months of 2017.  At the

*Class Action Complaint and Demand for Jury Trial*                    **Page 20**

same time that LuLaRoe overcharged consumers in jurisdictions with no sales tax more than $8 million, LuLaRoe garnered $7.5 million in processing fees for its consumers' use of the Audrey POS system.

88.    Prior to implementing its unlawful 2016 Tax Policy, LuLaRoe was overpaying its sales tax obligations to taxing authorities on ***all*** purchases made by class members (when no tax was in fact charged because the toggle switch was used).

89.    LuLaRoe was indiscriminately paying sales tax because the information obtained from LuLaRoe's POS system did not distinguish between retailers' in-state sales and out of state sales.

90.    By implementing its 2016 Tax Policy, LuLaRoe improperly passed the costs associated with the shortcomings of its POS system and its indiscriminate tax payments onto its end consumers, including the class members.

91.    LuLaRoe's fraudulent 2016 Tax Policy was implemented at the expense of the class and was patently designed to save LuLaRoe from paying both: (i) the immediate costs associated with fixing the systemic flaws of its POS System; and (ii) its sales tax overpayments to the taxing authorities caused by Audrey's failures. Any suggestion by LuLaRoe that it did not receive a benefit from its deceptive acts is unsupportable.

## CLASS ALLEGATIONS

92.    Plaintiff bring this class action on behalf of herself and all other similarly situated class members under Rules 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, and seeks to certify the following class:

> All persons who were assessed sales tax on clothing purchases from LuLaRoe whose remote purchases were delivered into Montana, which does not assess a sales or use tax on the products LuLaRoe sells.

93.    Excluded from the class is Defendant, as well as its past and present officers, employees, agents or affiliates and any judge who presides over this action.

94.    Plaintiff reserves the right to expand, limit, modify, or amend the class definitions, including the addition of one or more subclasses, in connection with her motion for class certification, or at any other time, based on, among other things, changing circumstances and new facts obtained.

95.    Numerosity. The class described above is so numerous that joinder of all members is impracticable. The disposition of the individual claims of the respective class members will benefit the parties and the Court and will facilitate judicial economy.

96.    Ascertainability. The class members are ascertainable through records kept by Defendant. Plaintiff and class members were required to input their

personal and financial information into Audrey to purchase products from Defendant. Defendant records this information and the products the class members purchased in internal databases.

97. Typicality. Plaintiff's claims are typical of the claims of the members of the classes. The claims of each class member arise from the same course of conduct: Defendant's requirement that class members pay for their purchases via an online point-of-sale payment platform that automatically assesses sales tax without consideration of the laws of the taxing authorities where the class members reside. The claims of Plaintiff and class members are based on the same legal theories and arise from the same unlawful conduct.

98. Existence and Predominance of Common Questions of Law and Fact. This action involves common questions of law and fact, which predominate over any questions affecting individual class members. These common questions include, but are not limited to, the following:

      a.     Whether Defendant collected funds from Plaintiff and individual class members under a nonexistent tax;

      b.     Whether the law authorizes these converted funds;

      c.     Whether Defendant lacked authority under the law to collect funds under a nonexistent tax;

      d.     Whether Defendant's conduct was deceptive and likely to mislead consumers; and

      e.     Whether Defendant converted funds that lawfully belonged to Plaintiff and the class members.

99.   <u>Adequacy of Representation</u>. Plaintiff is an adequate representatives of the class because her interests do not conflict with the interests of the class members. Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the class members and Plaintiff has no interests antagonistic to the class members. Plaintiff has retained counsel who are competent and experienced in class action litigation, and who possess specific expertise in consumer class actions.

100.   <u>Superiority</u>. The nature of this action and the nature of laws available to Plaintiff and the class make the use of the class action format a particularly efficient and appropriate procedure to afford relief for themselves and the class for the wrongs alleged. The damages or other financial detriment suffered by individual class members is relatively modest compared to the burden and expense that individual litigation of their claims against Defendant would entail. It would thus be virtually impossible for Plaintiff and class members, on an individual basis, to obtain effective redress for the wrongs done to them. Absent class action litigation, class members, and the general public would not likely recover, or would not likely have the chance to recover damages, and Defendant will be permitted to retain the converted proceeds of its fraudulent and deceptive misdeeds

and would suffer no consequences for the fraud it committed on consumers in this state.

101.  <u>Choice of Law.</u> Plaintiff seeks to certify the class under the laws of Montana.

**COUNT I**

**Montana Consumer Protection Act**

102.  The allegations contained in the previous paragraphs are incorporated by reference.

103.  Plaintiff brings this claim individually under the laws of Montana, and on behalf of the Class.

104.  The Montana Consumer Protection Act ("CPA") makes it unlawful to engage in any unfair or deceptive acts or practices in the conduct of any trade or commerce. *See* Mont. Code. Ann. § 30-14-103.

105.  Defendants violated the CPA by unlawfully charging and collecting an unlawful sales tax on its clothing sales to Plaintiff and class members; by failing to disclose that they were not authorized to collect such taxes; and by actively misrepresenting to their customers, directly and through its retailers, that their 2016 Tax Policy and their collection of "sales tax" from the class members was proper and lawful.

106.   Defendants intentionally violated the CPA by programming their online point-of-sale payment system to collect sales tax on clothing when such collection was unlawful and not authorized by the taxing authority of the buyer.

107.   Plaintiff and the class members suffered ascertainable loss as a result of Defendants' CPA violations, which necessarily flowed directly from Defendants' fraud or deceit in its scheme to systematically overcharge its customers.

108.   Plaintiff and all class members justifiably relied on Defendants' knowingly false representations that the surcharge was a proper sales tax and, therefore, paid the invoices generated by Audrey.

109.   Plaintiff and the class members have been damaged by Defendants' deceptive practices.

110.   Defendants' conduct was intentional, wrongful, reckless, and outrageous.

111.   Accordingly, Plaintiff and the individual class members and are entitled to recover treble or statutory damages, costs and reasonable attorneys' fees.

## COUNT II

### Conversion and Misappropriation

112.   The allegations contained in the previous paragraphs are incorporated by reference.

113.   Plaintiff brings this claim individually under the laws of Montana, and on behalf of the class.

114.   By its conduct, Defendants have converted and/or misappropriated funds belonging to Plaintiff and individual class members.

115.   Plaintiff and the class members had a possessory interest in the converted funds.

116.   Defendants intentionally interfered with that possession when they willfully and knowingly instituted an unlawful surcharge on Plaintiff and class members' purchases in the guise of a "tax."

117.   As such, Defendants' collection of sales tax converted and misappropriated the funds of Plaintiff and the members of the class without their consent.

118.   Defendants' conduct in programming Audrey to surcharge Plaintiff and class members was the legal cause of the loss of their funds.

119.   Defendants' conduct was intentional, wrongful, reckless, and outrageous.

120.   Alternatively, if the conversion and/or misappropriation was not deliberate, it is the result of Defendants' recklessness and gross neglect.

121.   This conversion and misappropriation of funds benefitted Defendants, while acting to the severe pecuniary disadvantage of Plaintiff and class members.

122.   Because the initial taking of the funds was unlawful and because there was an affirmative act of conversation through assertion of title inconsistent with Plaintiff and class members' rights, no demand for return of the funds was necessary.

123.   Accordingly, Plaintiff and the individual class members and are entitled to recover damages, interest, and punitive damages.

## COUNT III

### Deceit

124.   The allegations contained in the previous paragraphs are incorporated by reference.

125.   The facts support Defendants' violation of § 27-1-712, MCA, which states:

(1) One who willfully deceives another with intent to induce that person to alter the person's position to the person's injury or risk is liable for any damage that the person suffers.

(2) A deceit, within the meaning of subsection (1), is either:

(a) the suggestion as a fact of that which is not true by one who does not believe it to be true;

(b) the assertion as a fact of that which is not true by one who has no reasonable ground for believing it to be true;

(c) the suppression of a fact by one who is bound to disclose it or who gives information of other facts that are likely to mislead for want of communication of that fact; or

(d) a promise made without any intention of performing it.

(3) One who practices a deceit with intent to defraud the public or a particular class of persons is considered to have intended to defraud every individual in that class who is actually misled by the deceit.

§ 27-1-712, MCA.

126.   Accordingly, Plaintiff and the individual class members and are entitled to recover compensatory damages and punitive damages.

## **PRAYER FOR RELIEF**

127.   Wherefore, Plaintiff, on behalf of herself and the other members of this class, requests this Court award relief against Defendants as follows:

       a.    Certifying the class and designating the named Plaintiff as the Class Representatives, and their counsel as Class Counsel;

b.   Declaring Defendants' conduct unlawful and enjoining the conduct described herein;

c.   Awarding Plaintiff and the proposed class members actual, statutory and punitive damages;

d.   Awarding attorneys' fees and costs; and

e.   For such other relief as the Court may deem necessary or appropriate.

**<u>JURY DEMAND</u>**

Plaintiff demands a trial by jury on all issues so triable.

DATED this 13th day of September, 2018.

WESTERN JUSTICE ASSOCIATES, PLLC

/s/ Domenic A. Cossi
Domenic A. Cossi, Esq.
Maxwell E. Kirchhoff, Esq.
303 West Mendenhall, Ste. 1
Bozeman, MT 59715
*Attorneys for Plaintiff*

CARLSON LYNCH SWEET KILPELA &
CARPENTER, LLP
R. Bruce Carlson, Esq.
Kelly K. Iverson, Esq.
Kevin W. Tucker, Esq.
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
 (*All to be admitted pro hac vice*)
*Attorneys for Plaintiff*