IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| MELISSA HILL, individually and on behalf of all others similarly situated,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br><br>LLR, INC. d/b/a/ LuLaRoe, and LULAROE, INC.<br>　　　　　　Defendants. | CV 18-120-GF-BMM-KLD<br><br>**FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |

Plaintiff Melissa Hill, on behalf of herself, and all others similarly situated, brought this putative class action against Defendant LLR, Inc. d/b/a LuLaRoe and Defendant LULAROE, Inc. (collectively "LLR" or "Defendants"). Hill asserts three counts against LLR: violation of the Montana Consumer Protection Act ("MCPA") (Count 1); conversion and misappropriation (Count II); and deceit (Count III). Presently before the Court is LLR's Motion for Summary Judgment, or in the alternative, Motion for Partial Summary Judgment. (Doc. 99.)

**I.　Background**

LLR is a multi-level marketing company that sells clothing through independent retailers ("Retailers") located in all fifty states. The Retailers sell

1

LLR's product to third-party consumers. In 2015, LLR initiated use of a proprietary point of sale ("POS") system called "Audrey" to begin remitting tax on its Retailers' sales. The Audrey system included a toggle-switch that allowed LLR's Retailers to turn off tax charges when they sold LLR's products into tax-free jurisdictions, such as Montana. In 2016, LLR discovered that despite the toggle-switch feature, it was overpaying sales tax because it was paying tax on the transactions shipped to consumers in tax-free jurisdictions without charging those consumers tax.

In April 2016, LLR attempted to solve its tax overpayment problem by instituting a tax policy (the "2016 Tax Policy") which collected tax from consumers based on retailer location, regardless of where the product was delivered. LLR announced this policy to its retailers with the mandate that the retailers comply with its terms. Concurrent with its enactment of the 2016 Tax Policy, LLR issued a sales tax memorandum and "white paper" to its retailers further expounding upon the policy. The white paper claimed the policy of collecting sales tax based on the retailer's address was proper, even if the end customer was not physically present in that jurisdiction.

In May 2016 LLR received complaints from the Attorneys General of Pennsylvania and Minnesota regarding the 2016 Tax Policy. LLR thereafter acknowledged the effect of its policy was to overcharge people in states that did

not have a sales tax. LLR nevertheless continued operating under the policy until May 31, 2017. This alleged practice – the systematic overcharging of sales tax on consumers in tax-free jurisdictions – is the focus of this action.

Beginning in June 2016, LLR initiated efforts to refund the improperly taxed amounts to customers. LLR identified more than 2.5 million transactions involving merchandise delivered to non-taxing jurisdictions and issued refunds to affected customers. Of these, 52,379 transactions were shipped to end consumers in Montana, including Hill. LLR issued sales tax refunds in the amount of $188,697 for these Montana transactions. The refunds reflected only the amounts it improperly charged without any interest or other damages added.

In February 2017, counsel initiated a class-action lawsuit against LLR in the Western District of Pennsylvania alleging claims on behalf of consumers in Montana and ten other states who were incorrectly charged sales tax on clothing purchases processed through the Audrey system. *Webster v. LLR, Inc.*, 2018 WL 10230741 (W.D. Penn. 2018). The *Webster* court declined to certify the class due to overwhelming variations in the applicable laws of the eleven states involved. On September 19, 2018 the Pennsylvania court dismissed *Webster* for lack of subject matter jurisdiction.

One week prior to *Webster*'s dismissal, Hill filed this action on behalf of herself and the putative class members seeking damages for the lost time value of the sales tax LLR collected, along with statutory and punitive damages.

## II.   ANALYSIS

### A.   Legal Standard

Under Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986). A movant may satisfy this burden where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 251 (1986).

Once the moving party has satisfied its initial burden with a properly supported motion, summary judgment is appropriate unless the non-moving party designates by affidavits, depositions, answers to interrogatories or admissions on file "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. 317, 324 (1986). The party opposing a motion for summary judgment "may not

rest upon the mere allegations or denials" of the pleadings. *Anderson*, 477 U.S. at 248.

In considering a motion for summary judgment, the court "may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 130, 150 (2000); *Anderson*, 477 U.S. at 249-50. The Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in the non-moving party's favor. *Anderson*, 477 U.S. at 255; *Betz v. Trainer Wortham & Co., Inc.*, 504 F.3d 1017, 1020-21 (9th Cir. 2007).

## III.    Discussion

LLR requests summary judgment on each of Hill's claims. LLR argues Hill cannot establish all the elements required to prove her claims, namely that she has suffered an ascertainable loss under the MCPA, or that she suffered damages due to LLR's alleged conversion or deceit.

### A.    Ascertainable loss under the MCPA

LLR argues that Hill has not suffered an ascertainable loss under the MCPA because LLR provided Hill with an over-refund that compensated Hill in excess of the interest on the sales-tax she claims she is owed. Hill may assert a claim under the MCPA so long as she has suffered any ascertainable loss of money or property. Mont. Code Ann. § 3-14-133(1). The Montana Supreme Court has held that "an ascertainable loss of money and property" does not require a showing of

"actual damages[.]" *Bratton v. Sisters of Charity of Leavenworth Health System, Inc.*, 461 P.3d 127, ¶ 31 (Mont. 2020). However, a MCPA claim cannot proceed unless the plaintiff has suffered "any ascertainable injury[.]" *Bratton*, ¶ 31.

For purposes of evaluating standing under Article III and the MCPA, this Court previously found Hill suffered an ascertainable loss for the "loss of use of her money" and had "not been compensated for the lost time value of that money." *Hill*, 2019 WL 2404900, *5-6. The Ninth Circuit recently agreed that "the temporary deprivation of money gives rise to an injury in fact for purposes of Article III standing[,]" and that compensation for loss of use of money should be provided "through either an award of damages or the payment of prejudgment interest." *Van v. LLR¸* 962 F.3d. 1160, 1164 (9th Cir. 2020).

Although this Court has already determined Hill suffered an ascertainable loss under the MCPA, LLR asks the Court to reconsider in its previous finding due to newly discovered facts. LLR argues that the evidence in this matter now shows that Hill received an over-refund that provided her with funds in excess of the compensation she sought for the lost time value of her money. LLR explains that it mistakenly over-refunded Hill due to an error in its refund processing system. (Doc. 102-1 at ¶ 12.) LLR argues that regardless of the accidental nature of the over-refund, the fact remains that Hill received compensation covering the

6

lost time value of her money. LLR therefore asserts that Hill cannot identify any degree of loss and her MCPA claim fails as a matter of law.

On March 5, 2017, Hill sent an email to LLR inquiring about the propriety of the sales tax LLR charged on her purchases. (Doc. 108 at ¶ 5.) Although the parties dispute the precise number of credits LLR issued as refunds to Hill, it is undisputed that between March 17, 2017 and June 11, 2017, LLR refunded Hill for the over-collected sales tax.[1] (Doc. 108 at ¶ 6.) During this timeframe, LLR also issued Hill an over-refund of between $27.03 and $38.59 due to system processing errors. (Doc. 108 at ¶ 9; Doc. 102-1 at ¶ 11.) Hill recently sent a money order to LLR in the amount of the over-refund, which LLR promptly mailed back. (Doc. 109-2 at 11; Doc. 109-3 at 2-10; Doc. 119-2 at ¶ 4.)

After considering the new discovery, the Court declines to alter its previous decision finding that Hill has identified an ascertainable loss for MCPA purposes. *PNC Bank, N.A. v. Wilson*, 2016 WL 3033535, at *7 (D. Mont. Apr. 28, 2016) ("The [MCPA] clearly requires an 'ascertainable loss' – an identifiable loss.") (vacated in part on other grounds). The Montana Supreme Court recently discussed the MCPA's ascertainable loss requirement in *Bratton*. There, SCL Health initiated a refund program for purposes such as patient overpayments. The

---

[1] The parties also dispute whether Hill received corresponding refunds for each tax charge she was assessed. (Doc. 108 at ¶¶ 7-10; Doc. 109-2 at ¶ 2; and Doc. 109-2 at 9).

plaintiff did not take issue with SCL Health's initial billing process. Rather, the plaintiff argued SCL Health's method of issuing refunds violated the MCPA. *Bratton*, at ¶¶ 2-.9.

SCL Health issued the refunds to patients in the form of prepaid debit cards but provided the patients the opportunity to request their refund in the form of a check or bank draft. *Bratton*, at ¶ 2. SCL Health issued a refund to the plaintiff via two debit cards. The plaintiff did not incur any fees associated with the debit cards and did not use either card. Instead, the plaintiff filed suit against SCL Health arguing the refund program violated the MCPA. *Bratton*, at ¶¶ 8-9.

Although the plaintiff in *Bratton* argued she suffered an ascertainable loss under the MCPA because she could not obtain her funds from SCL Health, the Montana Supreme Court concluded otherwise. The court found that although the plaintiff was not required to show actual damages to establish an ascertainable loss, she was unable to show any ascertainable injury. *Bratton*, at ¶ 31. The record established that the plaintiff received the refunds she was owed, did not attempt to request her refunds be issued via check prior to filing suit, did not attempt to cash or deposit her refunds, was not frustrated in requesting her refunds via check, and was not deceived by the terms of service issued with her debit cards. *Bratton*, at ¶ 31. The court therefore found the plaintiff did not suffer any ascertainable injury under the MCPA.

The facts in *Bratton* are clearly distinguishable from those at issue here. Unlike the plaintiff in *Bratton*, Hill is not asserting LLR's refund program violated the MCPA. Rather, Hill's claim is based on LLR's improper imposition of sales tax. As this Court previously found, Hill's ascertainable injury is identifiable as the temporary deprivation of her money. LLR's apparent processing error neither frustrates Hill's ability to identify an ascertainable loss, nor ameliorates its misconduct. LLR's taxation resulted in "the loss of use of [Hill's] money" and LLR's accidental over-refund does not negate the occurrence of that loss. *Hill*, 2019 WL 2404900, *5-6.

The Montana Supreme Court defines "ascertainable loss" broadly. *Puryer v. HSBC Bank USA, N.A.*, 419 P.3d 105, ¶ 36 (Mont. 2018). Consistent with the Montana Supreme Court's guidance, this Court has found that definition to include the lost time value of money. *Hill*, 2019 WL 2404900, *4. LLR's argument conflating the amount of Hill's damages with the definition of ascertainable loss is at odds with the holdings of this Court and the Montana Supreme Court. *See Puryer*, at ¶ 36 (citing *Jacobson v. Bayview Loan Servicing, LLC*, 371 P.3d 397, ¶ 56 (2016)) (rejecting the argument that "ascertainable loss" requires a showing of "actual damages"). The Court concludes that LLR temporarily deprived Hill of money, and that deprivation is an ascertainable injury. LLR's over-refund of charges to Hill relates only to a damages inquiry and

does not disturb Hill's identifiable ascertainable injury. *See Van¸* 962 F.3d. at 1164 ("the temporary deprivation of money" is an injury compensated through damages).

### B. Conversion and Deceit

LLR is entitled to summary judgment on Hill's claims for conversion and deceit. Unlike the ascertainable loss inquiry under the MCPA, both conversion and deceit require a plaintiff to establish actual damages. Mont. Code Ann. § 27-1-712 (one who engages in deceit is "liable for any damage that the person suffers."); Mont. Code Ann. § 27-1-320(1) (damages for conversion include "the value of the property at the time of conversion with the interest from that time . . ."). The undisputed evidence shows that Hill cannot prove the damages element of either claim.

LLR has submitted documentary evidence adequately supporting its argument that Hill has cannot identify damages to support her claims for conversion and deceit. This evidence includes sworn declarations from LLR's tax analyst, invoices and purchase receipts, interest calculations, credit/debit card statements, and a refund itemization. (Docs. 102-1—102-15; 119-1—119-2.) These documents indicate LLR over-refunded Hill in an amount greater than the improper sales tax charges plus interest. LLR has met its burden of demonstrating

the absence of any genuine issue of material fact as to Hill's inability to establish damages.

The entirety of Hill's response to LLR's request for summary judgment on her deceit and conversion claims is a block quote of Judge Lynch's analysis of the claims under the Rule 12(b)(6) standard. (Doc. 107 at 18-19.) Not only is the Rule 12(b)(6) standard inapplicable here, but Hill fails to acknowledge that Judge Lynch found she adequately alleged the damages element of her claims because the record showed LLR refunded Hill only the amount it over-collected in sales tax. *Hill*, 2019 WL 2404900, at *6, *12. On that record, Judge Lynch properly found Hill established damages because LLR had not paid her interest on the sales tax charges. *Hill*¸ 2019 WL 2404900, at *6, *12. Considering the new evidence, that reasoning no longer stands. The record now shows that LLR refunded Hill for the sales tax she was assessed plus an over-refund in excess of the amount of interest she claims. (Doc. 101 at ¶¶ 1,5.)

The parties have produced documents identifying the refund credits LLR provided to Hill. (Docs. 109-2 at 6-7; 102-8; 102-1 at 10-12; 102-6 at 364-71.) Both parties agree Hill was overcharged $253.11 in sales tax. (Doc. 108 at ¶ 2.) Based on Hill's provided bank statements, and applying an interest rate of 10% per annum for the period between each payment that Hill made for sales tax and her receipt of a refund for that payment, Hill's alleged damages including interest

at most total $262.23. [2] (Doc. 108 at ¶¶ 2, 6-7, 11; Doc. 119-1.) However, LLR refunded Hill either $291.70, according to LLR's records, or $280.14 according to Hill's records. (Doc. 109-2 at 6-7.) Under either calculation, Hill received refunds in excess of the sales tax she was charged by either $38.59 or $27.03. (Doc. 100 at 13; Doc. 108 at ¶¶ 8-9, 11.) Both amounts are in excess of the total interest available to Hill. (Doc. 109-2 at 6-7; Doc. 119-1 at 1-10.)

Although Hill can point to one transaction where it is undisputed that she did not receive a corresponding refund, it is also undisputed that LLR has provided her with funds covering that charge plus interest.[3] (Doc. 107 at 18; Doc. 102-1 at ¶ 10.) Hill appears to argue that the refund she received should not apply to the transaction merely because the charge cannot be matched to a corresponding credit. The Court declines to disregard what the evidence clearly demonstrates: LLR provided Hill with a refund in an amount greater than the total sales tax charged plus interest. Hill therefore cannot establish damages. *See Feller v. First Interstate Bancsystem, Inc.*, 299 P.3d 338, ¶ 29 (Mont. 2013) (plaintiff failed to

---

[2] At most, Hill is entitled to $9.12 in interest on the overcharges. (Doc. 100 at 13; Doc. 102-1 at 9; Doc. 102-4; Doc 119-1 at 1-10.) Hill has failed to establish a genuine dispute of fact as to this amount. (Doc. 108 at ¶ 12.) The Court additionally notes that even when calculating interest based on the total sales tax charged from November 21, 2016 through June 11, 2017, the total amount is still only $14.01.

[3] LLR's calculated over-refund amount includes a deduction of the sales tax charge of $3.20 for the identified transaction. (Doc. 119-1 at 6.)

establish damages element of conversion claim where she received a refund of her alleged damages plus interest); *Grizzly Sec. Armored Express, Inc. v. Bancard Servs., Inc.*, 384 P.3d 68, ¶¶ 45-47 (Mont. 2016) (summary judgment proper on fraud claim where plaintiff suffered no damages).

Finally, Hill's recent return of the over-refund to LLR fails to breathe new life into the damages element of her claims. Hill apparently did not realize she received a refund in excess of her charges plus interest until LLR brought it to her attention after reviewing the records in this case. Hill's attempt to return the funds to LLR is no more than a last-ditch effort to overcome her inability to establish damages. Because Hill has not established a dispute of fact as to whether she suffered actual damages as a result of LLR's alleged conversion and deceit, LLR's request for summary judgment on those claims should be granted. *Feller*, at ¶ 29 (plaintiff has not suffered damages where she received a refund in the amount of the disputed sum plus interest).

## IV. Conclusion

Having considered the Defendants' Motion for Summary Judgment (Doc. 99), the Court determines that partial summary judgment is warranted.

Accordingly, **IT IS RECOMMENDED** that Defendants' Motion for Summary Judgment be **GRANTED IN PART** and **DENIED IN PART** as follows:

1. Defendants' Motion for Summary Judgment should be **DENIED** as to Plaintiff's claim under the Montana Consumer Protection Act (Count I);

2. Defendants' Motion for Summary Judgment should be **GRANTED** as to Plaintiff's claim for conversion (Count II);

3. Defendants' Motion for Summary Judgment should be **GRANTED** as to Plaintiff's claim for deceit (Count III).

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendations of United States Magistrate Judge upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after service hereof, or objection is waived.

**IT IS ORDERED**.

DATED this 3rd day of September, 2020.

_____
Kathleen L. DeSoto
United States Magistrate Judge